IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| WILLIAM S. AHOLELEI, | ) | CASE NO. 03-00171 HG-KSC |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTION FOR SUMMARY |
| vs. | ) | JUDGMENT |
| | ) | |
| BARBARA KYSAR, DOCTOR S. | ) | |
| PADERES, DOCTOR BAUMAN, | ) | |
| DOES I-V, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

306-072/p.msj.wpd

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUM MARY JUDGMENT

## I.     INTRODUCTION

Plaintiff William S. Aholelei (hereafter "Plaintiff") initially filed a lawsuit

on April 14, 2003 alleging violations of his civil rights pursuant to 42 U.S.C.

§1983 while Plaintiff was in the custody of the State of Hawai'i ("State")

Department of Public Safety ("DPS").

On September 22, 2003 Plaintiff amended his Complaint to include Kay

Bauman, M.D. as a Defendant in the case.  Plaintiff's Amended Complaint appears

to allege that a violation of his constitutional rights occurred as a result of medical

care and treatment in connection with stones that developed in his kidneys.

Plaintiff filed this lawsuit against Dr. Bauman individually and in her official capacity as Medical Director of DPS.  Complaint at IV. Summary judgment should be granted in favor of Dr. Bauman, as a matter of law, because:

1.    The Eleventh Amendment of the U.S. Constitution bars Plaintiff's lawsuit against Dr. Bauman in her official capacity as Medical Director of DPS;

2.    Even if Plaintiff establishes constitutional violations against Dr. Bauman, she is entitled to the defense of qualified immunity.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 56 allows a court to grant summary judgment as a matter of law where there is no genuine issue of material fact.  Summary judgment in favor of a defendant is appropriate when the plaintiff "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A moving defendant need not produce evidence negating the existence of an element for which the plaintiff will bear the burden of proof at trial. *Id.*, 477 U.S. at 322.  Once the movant has met its burden, the plaintiff has the affirmative burden of coming forward with specific facts evidencing a need for trial; the plaintiff cannot stand on its pleadings, or simply assert that it will be able to discredit the defendant's evidence at trial. *T.W. Elec. Serv. v. Pacific Elec. Contractors*

*Ass'n.*, 809 F. 2d 626, 630 (9th Cir. 1987).  Whether a fact is "material" hinges on the substantive law at issue.  A fact is "material" if it might affect the outcome of the case.  Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.  UNCONTROVERTED MATERIAL FACTS

On July 2, 2003 Dr. Bauman began serving as the Medical Director for the State of Hawai'i Department of Public Safety (DPS).  On October 3, 2002 Plaintiff reported to Sick Call complaining of pain on his left side.  A physical examination and urinalysis was performed and Plaintiff was given Tylenol and scheduled for a clinic evaluation.  The following day, October 4, 2002, Dr. Bauman examined  Plaintiff and, as a result of her examination, scheduled an ultrasound to determine if Plaintiff had kidney stones and, if needed, a urology consultation.  The Special Utilization Review Committee approved Dr. Bauman's request on October 10, 2002 and on October 17, 2002 Plaintiff had a CT scan for renal stone protocol conducted.   The CT scan revealed a left  urethral obstruction calculus and bilateral renal calculi.   After review of the CT scan, on October 18, 2002 a request was made for a urology consult by urologist, David Kuchenbecker.  An appointment was scheduled for October 28, 2002.  Dr. Kuchenbecker

recommended a ureteroscopy and lithotripsy.  Dr. Kuchenbecker also recommended that the patient undergo ultrasound in the future.  On October 31, 2002 Dr. Kuchenbecker's recommendation were approved and on November 7, 2002 the patient underwent a cystoureteroscopy, laser lithotripsy, retrograde pyelogram and placement of a stent.

Plaintiff next complained of kidney problems on December 15, 2002.  He was provided with Advil and Motrin 600 mg for the pain and was seen by Dr. Paderes  on December 19, 2002.  On January 16, 2002 Plaintiff again complained of pain due to kidney stones and was seen by Dr. Young on January 18, 2003.  Dr. Young prescribed Motrin 800 mg for 90 days, gave Plaintiff a strainer to collect the stones for analysis and advised Plaintiff to increase his fluid intake.  Dr. Young also requested a Spiral CT which was performed on January 29, 2003.  On January 30, 2003, Dr. Bauman performed a chart review and requested further urology consultation for the Plaintiff.  Accordingly, on February 6, 2003, Dr. Kuchenbecker performed a laser uretercoscopy at Castle Medical Center.   On February 26, 2003 Plaintiff was examined again by Dr. Kuchenbecker.  Dr. Kuchenbecker prescribed Allopurinal and NaHCo3 in an attempt to dissolve the stones.  He ordered a recheck CT in 3 months and Vicodin for pain as needed.  He removed the left stent.  On March 20, 2003 Dr. Paderes examined Plaintiff who

continued to complain of pain.  On April 2, 2003 Dr. Bauman responded to

Plaintiff's Grievances concerning his medical care by recognizing that this had

been a "painful and serious" problem for Plaintiff.  She explained that they were

following Dr. Kuchenbecker's recommendations by giving him the medications

that would hopefully decrease the production of stones.  She advised that Dr.

Kuchenbecker planned to see him again in three months from his February 26,

2003 appointment with a repeat CT scan prior to that visit to determine the status

of the stones.   If Dr. Kuchenbecker saw no resolution to the problem, he would

schedule a lithotripsy.

On April 30, 2003 another CT scan was performed and on May 28, 2003 Dr.

Bauman requested a further consult with Dr. Kuchenbecker.  Dr. Kuchenbecker

saw Plaintiff on July 29, 2003 and on July 30, 2003 performed an extracorpreal

shockwave lithotripsy .

## IV.   ARGUMENT

Plaintiff's claims against Dr. Bauman, individually and in her official

capacity as Medical Director of DPS, should be dismissed.

### A.   The Eleventh Amendment to the U.S. Constitution Bars Suit Against Defendant Bauman in her Official Capacity as Medical Director of DPS.

Plaintiff's suit against Dr. Bauman in her official capacity as Medical

Director of DPS is barred by the Eleventh Amendment to the U.S. Constitution.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be
> construed to extend to any suit in law or equity,
> commenced or prosecuted against one of the United
> States by Citizens of another state, or by Citizens or
> Subjects of any Foreign State.

U.S. Constitution, Amendment XI. Thus, under the Eleventh Amendment, a

sovereign state is immune from lawsuits in federal court that are brought by the

state's own citizens or by citizens of another state. *Papasan v. Allain*, 478 U.S.

265, 276 (1986) (sovereign immunity is an absolute bar to suits against a state in

federal court).

Sovereign immunity under the Eleventh Amendment extends to Dr. Bauman

because a lawsuit against an individual in her official capacity is none other than

an action against the government entity of which the individual is an officer or

agent. *Kentucky v. Graham*, 473 U.S. 159, 165-167 (1985) (citing *Monell v. New

York City Dept. of Social Services*, 436 U.S. 658, 691 n. 55 (1978). The U.S.

Supreme Court has held that individuals sued in their official capacity possess

"immunity that the entity [ ] may possess, such as the Eleventh Amendment."

*Kentucky* at 167. Here, DPS is an agency of the State of Hawai'i. Thus,

Plaintiff's suit against Dr. Bauman in her official capacity as Medical Director of

DPS should be treated as a suit against the State of Hawai'i. Since Dr. Bauman is immune from suit under the Eleventh Amendment, she is entitled to summary judgment, as a matter of law, as to all claims alleged against her in her official capacity as Medical Director of the Department of Public Safety.

### B. Dr. Bauman is Entitled to the Defense of Qualified Immunity.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Jeffers*, 267 F.3d at 910 (quoting *Harlow v. Fitzgerald*, 4457 U.S. 800, 818 (1982). Determining whether a public official is entitled to qualified immunity requires a two-part analysis: (1) Was the law governing the state official's conduct clearly established? and (2) Under that law could a reasonable state official have believed his conduct was lawful? Jeffers, 267 F.3d at 910 (citations omitted); *See also Estate of Ford v. Ramirez-OPalmer*, 301 F.3d 1043, 1049 (9th Cir. 2002); *Saucier v. Katz*, 533 U.S. 194 (2001).

### 1. Was the law governing Dr. Bauman's conduct clearly established?

Eighth Amendment protections afforded to inmates relating to healthcare have been clearly delineated. *See e.g, Estelle v. Gamble*, 429 U.S. 97, 106 (1976);

*Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In order to state a cognizable claim

for an Eighth Amendment violation with respect to medical care, a prisoner must

allege acts or omissions sufficiently harmful to evidence deliberate indifference to

serious medical needs. *Estelle*, 429 U.S. at 106; *Toussaint v. McCarthy*, 801 F.

2d 1080, 1111 (9th Cir. 1986). "It is only such indifference that can offend

'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*,

429 U.S. at 106. Mere negligence or allegations of medical malpractice or even

isolated occurrences of neglect do not rise to the level of deliberate indifference to

constitute a violation of the Eighth Amendment. See, *Estelle*, 429 U.S. at 106;

*Farmer v. Brenan*, 511 U.S. 825 (1994). As long as the threshold of deliberate

indifference to serious medical needs is not crossed, inmates have no Eighth

Amendment right to receive a particular or requested course of treatment, and

prison doctors remain free to exercise their independent medical judgment. *Long

v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

    Deliberate indifference may be established if a plaintiff can prove two

elements: 1) the seriousness of the prisoner's medical needs and; 2) the nature of

the defendant's response to that need. *Estelle*, 429 U.S. at 104-105. Because

society does not expect that prisoners will have unqualified access to health care,

deliberate indifference to medical needs amounts to an Eighth Amendment

violation only if those needs are "serious." ***Hudson v. McMillian***, 503 U.S. 1,9,

(1992). Once a court determines that a medical need is serious, it can then analyze

the actions and/or omissions of the defendant to determine whether those actions

were lawful or reasonable based on the circumstances known to the defendant at

the time of the events. ***McGuckin***, 974 F. 2d at 1060. A serious medical need

exists when the failure to treat a prisoner's condition could result in further

significant injury or the "unnecessary and wanton infliction of pain." ***Id.*** at 1059.

Here there was no failure to treat Plaintiff's condition. Dr. Bauman began

serving as the Medical Director of DPS in July 2002. Thereafter, Plaintiff's first

complaint of pain connected to kidney stones occurred on October 3, 2002. Dr.

Bauman examined the patient the following day and requested an ultrasound and

possible urology consult. On October10, 2002 the SURP committee approved

radiology imaging and on October 17, 2002 an abdominal CT scan with renal

stone protocol was completed. The CT scan results were reviewed and

arrangements were made for a urology consult which occurred on October 28,

2002. Pursuant to the recommendations of the urologist, a cystoureteroscopy and

laser lithotripsy and retrograde pyelogram was performed on November 17, 2002.

When Plaintiff's pain continued, a spiral CT scan was undertaken on

January 29, 2003 and on January 30, 2003, Dr. Bauman performed a chart review

and requested further urology consultation and follow-up for the Plaintiff.  On February 6, 2003 a cystoureteroscopy with laser lithotripsy and retrograde pyelogram was completed at Castle Medical Center.  During the follow up exam by Dr. Kuchenbecker, medications to dissolve the stones were prescribed with Plaintiff to return to his care in three months.

As recommended by Dr. Kuchenbecker, Plaintiff underwent another abdominal CT on April 30, 2003 which was followed by another examination by Dr. Kuchenbecker and the performance of an extracorporeal shockwave lithotripsy on July 30, 2003.  Throughout Plaintiff's treatments he was provided with Motrin 800 mg and Vicodin for pain relief.

Dr. Bauman's actions did not constitute deliberate indifference to Plaintiff's medical needs.  The U.S. Supreme Court in *Farmer* articulated a "subjective recklessness" test in determining whether or not a prison official's actions or omissions could be considered deliberate indifference.  In adopting the next highest level of subjective intent, actual knowledge of the type sufficient to constitute recklessness in the criminal law, the Court stated that the subjective test **does not** permit liability to be premised on obviousness or constructive notice.  *Farmer*, 511 U.S. at 838-840.  The Court explained that a prison official can be found liable under the Eighth Amendment only when he or she "knows of **and**

-10-

disregards an excessive risk to inmate health or safety." *Id.* at 837 (emphasis added). This standard requires that the official be both subjectively aware of facts from which the inference could be drawn that a substantial risk of harm exists to inmate health or safety, and he must also make the inference. *Id.* "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot [ ] be condemned as the infliction of punishment." *Id.* at 838. In other words, a defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established. *McGuckin*, 974 F.2d at 1060. A showing of merely inadvertent or negligent medical care is not enough to establish a constitutional violation. *Estelle*, 429 U.S. at 105-106; *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998).

Here, Plaintiff cannot demonstrate that Dr. Bauman (1) actually knew of the substantial risk of harm faced by Plaintiff, if any and (2) drew that inference and then purposefully ignored, disregarded or failed to address that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 838. Rather, the evidence is that Dr. Bauman arranged for various outside consultations by various healthcare specialists in an effort to alleviate the pain for which Plaintiff complained. These outside specialists included radiologists and a urologist.

-11-

There is no evidence that Dr. Bauman deliberately failed to take any action to minimize the alleged harm to Plaintiff. Plaintiff has alleged no facts to support his claim that Dr. Bauman violated Plaintiff's Eight Amendment Rights under the Constitutional or was in any manner deliberately indifferent to his serious medical need.

### 2. Under the Eighth Amendment, Dr. Bauman Could Have Reasonably Believed that Her Actions Were Lawful.

Even if we assume that Plaintiff would be able to establish an Eighth Amendment violation, Dr. Bauman would still be entitled to qualified immunity. *See e.g., Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir. 2003). In order for Plaintiff to prevail on this motion for summary judgment, Plaintiff "must 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury." *Jeffers*, 267 F.3d at 911 (citations omitted). Thus, Plaintiff must allege facts in this case that demonstrate that Dr. Bauman's actions were derived from an unconstitutional motive or state of mind. Here, Dr. Bauman examined Plaintiff with respect to his complaints of symptoms relating to kidney stones and arranged for consultations by outside health care specialists, including a urologist and radiologists. The actions by Dr. Bauman with respect to Plaintiff's medical care for his kidney condition were reasonable, timely and

demonstrate no improper motive. On the contrary, Dr. Bauman's response to Plaintiff's complaints and medical condition demonstrates consideration and care in addressing Plaintiff's medical needs. Accordingly, Dr. Bauman's actions were reasonable and she is entitled to qualified immunity.

Additionally, the Ninth Circuit has specified the required level of medical care that is constitutionally required in state prisons as follows: 1) prisoners must be allowed to request medical care; 2) prisoners must have access to competent medical personnel; and 3) prisoners must have adequate emergency care. ***Hoptowit v. Ray***, 682 F.2d 1237, 1253 (9th Cir. 1982). Here, Plaintiff was allowed to request medical care, had access to competent medical personnel and adequate emergency care which is evidenced by his continuous visits with certified nurse practitioners and doctors, including various specialists. Plaintiff was provided with pain medications and underwent various operative procedures in an attempt to eliminate his kidney stones. He was given appropriate advise in an attempt to prevent the reoccurrence of the stones.

### C.    Dr. Bauman is not liable based upon the doctrine of respondeat superior

Nor can Dr. Bauman be held vicariously liable under § 1983 for the actions of other personnel within the Department of Public Safety. Generally, supervisory

-13-

officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. §1983. *Jeffers*, 267 F.3d at 915; *Taylor*, 880 F.2d at 1045 ("there is no respondeat superior liability under §1983"). Under §1983, a supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Id*, at 1045, *citing Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984); *Bonner v. Lewis*, 857 F.2d 559, 566 (9th Cir. 1988) (doctrine of *respondeat superior* not applicable in prisoner's claim against director of Arizona's Department of Corrections).

## V.    CONCLUSION

For the foregoing reasons, Defendant Dr. Bauman, respectfully requests that the Court enter summary judgment in her favor as to all claims asserted against her in Plaintiff's Amended Complaint filed on September 22, 2003 and that the Amended Complaint be dismissed as to Dr. Bauman.

DATED: Honolulu, Hawai'i, _____ JUL 31 2006 _____.


_____
ARTHUR F. ROECA
APRIL LURIA
Attorneys for Defendant
Dr. Kay Bauman


-14-