# Herbert K. W. Chinn, M.D., Inc.
## ADULT and PEDIATRIC UROLOGY

Queen's Physician Office Building II
1329 Lusitana Street, Suite #108
Honolulu, Hawaii 96813

Telephone: 531-0848
FAX: 531-1032

E-mail: hkchinn@pol.net
Physicians Exchange: 524-2575

Monday, July 17, 2006

Ms. Miriam P. Loui
Deputy Attorney General
State of Hawaii
Department of the Attorney General
Civil Rights Litigation Division
425 Queen Street
Honolulu, Hawaii 96813

Re: Aholelei vs. Barbara Kysar, et. al.
Civil No. 03-00171 HG-KSC (USDC)

Dear Ms. Loui:

I have received and reviewed copies of the medical records pertaining to the cited case to include those from the Halawa Correctional Facility medical unit, Castle Medical Center, and Dr. David Kuchenbecker.

After reviewing the records and comparing the factors to the complaint, I find the following discrepancy: The complaint stipulates that "the CAT *[computerized axial tomography, now more commonly referred to as a CT scan]* scan results came back from Queens three monts *[sp]* prior" and "that there was an urgent note entered into my medical files three months prior allerting *[sp]* medical staff that I am desparately in needs of help and medical attentions, but nothing was done. After about a month later they finally took me back to Dr. Kuchenbecker in Kailua."

However, the multidisciplinary progress notes indicate a different time frame. From the initial complaint of left flank pain on 10/03/02, Dr. Paderes first became involved on 10/10/02 (page 003) by requesting an IVP *(intravenous pyelogram or kidney x-rays using intravenous contrast dye)* after the SURP *(specialized utilization review panel)* committee approval for a request for renal ultrasound, and then for urologic consultation on 10/18/02, again after SURP committee approval. He first became directly involved with the patient on 10/22/02 (page 00502). Thereafter, the patient received prompt care with an appointment to Dr. Kuchenbecker on 10/28/02 and surgery on 11/07/02. **Rather than the claimed three month delay from the time of the CT scan to treatment, the records indicate that the patient had x-rays approved within one week of the first complaint, CT scan obtained two weeks after the initial complaint, and request for urologic consultation about 15 days after the first complaint. Surgery did not occur until 4 ½ weeks after the initial complaint, but this delay seems primarily due to the authorization process through the prison system as well as the private consultant's schedule.**

Thereafter, with continued pain from his residual stones, he was noted to have recurrent stones on CT scan on 1/29/03, following the request for follow-up with Dr. Kuchenbecker approved on 1/24/03. He was seen by Dr. Kuchenbecker and underwent repeat surgical intervention on 2/06/03. **This seems to have been a time frame of 8 days between the first complaint and treatment.**

There is a three month period of time between a CT scan on 4/30/03 and the last surgery on 7/30/06, but this appears to be outside of the period of complaint. However, the patient had already received treatment by the urologist, and the remaining stones were 5 mm or less in diameter. 90-95% of stone this size can pass spontaneously without surgery. Furthermore, there are several notes indicating referral by Dr. Paderes to Dr. Kuchenbecker.

EXHIBIT "B"

-1-

# Herbert K. W. Chinn, M.D., Inc.
## ADULT and PEDIATRIC UROLOGY

Queen's Physician Office Building II  
1329 Lusitana Street, Suite #108  
Honolulu, Hawaii 96813

Telephone: 531-0848  
FAX: 531-1032

E-mail: hkchinn@pol.net  
Physicians Exchange: 524-2575

---

Reviewing the clinic notes overall, there does not appear to be a consistent or persistent series of complaints of overwhelming pain. Kidney stone pain (also noted as renal colic) is commonly described as the worse pain known to mankind. The typical nature is intermittent occurrences of severe pain. His pain seems to have been documented as infrequent and episodic. Each time he was seen in clinic, the pain had resolved significantly. Prolonged and continuous suffering or agony is not found in the records. This would have led to emergent care. In fact, when it was necessary to reschedule his x-rays, he retorted that "Oh, that's OK I don't care when they do it".

Based on the above, I find little merit in the complaints of delay in care of Mr. Aholelei by Dr. Paderes. The medical care provided by Dr. Paderes appears to be appropriate, without inordinate delay within the bureaucracy of the prison system, and furthermore, within the general community standard. To the contrary, within the constraints of the prison system, Dr. Paderes provided prompt attention and appropriate referral of the patient to specialist care.

There is also an allegation that the delay in prompt treatment led to multiple surgical procedures as well as prolonged suffering. However, the initial notes by Dr. Kuchenbecker indicated a need to separate the surgical treatment into separate procedures. He presented with bilateral kidney stones. As such, the recommendations from the lithotripsy ("stone breaking") companies seem to uniformly recommend against treating both kidneys simultaneously. This was meant to avoid simultaneous injury to both kidneys, which might require dialysis during the recovery period. Otherwise, one can easily maintain normal body function with only one functioning kidney. In addition, he had a large ureteral calculus requiring treatment first to ensure proper drainage from the kidney. Ureteral obstruction is a contraindication to proceeding with ESWL (extracorporeal shock wave lithotripsy, or breaking up stones with stone waves from a kidney stone machine). As such, the ureteroscopic laser lithotripsy would be separated from the ESWL if there was excessive swelling or inflammation (as would definitely be expected in this case since he had a large ureteral stone requiring laser fragmentation). In addition, ESWL is not available on an emergent basis nor available every day (usually only once a week) at Castle Medical Center and may very well have been unavailable. From the beginning of his treatment, it was apparent that he would be requiring at least three separate procedures to clear out his stones. Therefore, the allegation that delay caused or created a necessity for three operations is false.

If there are any further questions or issue to be resolved regarding the allegation of "deliberate indifference" on the part of Dr. Paderes, please contact me at the above address or telephone number.

Respectfully submitted,

*Herbert KW Chinn*  
Herbert K. W. Chinn, M.D.

# Herbert K. W. Chinn, M.D., Inc.
ADULT *and* PEDIATRIC UROLOGY

Queen's Physician Office Building II  
1329 Lusitana Street, Suite #108  
Honolulu, Hawaii 96813

Telephone: 531-0848  
FAX: 531-1032

E-mail: hkchinn@pol.net  
Physicians Exchange: 524-2575

Chronological review of the records:

The first indication of left flank pain occurred on 10/03/02 with a sick call (page 00506), although a tender and apparently superficial lump was noted (which is inconsistent with a kidney stone). He was sent to the medical clinic the next day on 10/04/02 (page 00506) for hematuria associated with abdominal and flank pain, as well as a noted past history of kidney stones. Appropriate evaluation with a renal ultrasound was ordered with plans to refer to an urologist as needed.

Instead of an ultrasound, an IVP was scheduled after receiving the required approval by the SURP committee on 10/10/02 (page 00643). The request was placed on 10/10/02 by Dr. Paderes. The study was scheduled initially for 10/16/02 but rescheduled for 10/17/02. Clinic notes indicated that he responded to the delay with "Oh, that's OK I don't care when they do it". CT KUB [noncontrast CT scan used to find kidney stones] (page 0641) was obtained instead of an IVP on 10/17/02 with the report indicating a large left midureteral stone measuring 17 x 7 mm, moderate left hydronephrosis with an 8 x 4 mm left upper pole stone, 2 mm middle calyceal stone, and left lower pole stones measuring 5 mm, 11 x 9 mm, and 10 x 17 mm, with right kidney stones measuring 4 mm in the lower pole, 1 mm lower pole calyceal stone, and 4 mm middle calyceal stone. Dr. Paderes promptly placed a referral to Dr. Kuchenbecker on 10/18/02 (page 00639).

Request placed on 10/18/02 to Dr. Kuchenbecker by Dr. Paderes (page 00639 and 004) with appointment made for 10/28/02. Consultation done as scheduled (page 00638 and 004).

SURP committee approved lithotripsy and urologic consultation on 10/31/02 with request placed by Dr. Paderes. He was seen by Dr. Kuchenbecker on 11/07/02 (page 00633 and 00630) for "routine, left ureteroscopy & laser lithotripsy of large upper ureteral calculus".

11/13/02 cystoscopy with stent removal by Dr. Kuchenbecker with plans to proceed with ESWL of the remaining stones (page 00629 and 005).

1/24/03 Request placed to SURP committee for urologic referral.

1/29/03 CT KUB (page 00625) demonstrates severe left-sided hydronephrosis with multiple stones in the right ureter. The final report and the hand-written wet (preliminary) reading are in conflict with the hand-written report indicating left hydronephrosis due to mid and distal left ureteral stones, while the final report indicated severe left-sided hydronephrosis with multiple stones in the **right** ureter, but obstruction on the left by the "upper and mid stones extending to the level of the sacroiliac joint", while other parts indicate multiple proximal and mid-ureteral stones measuring up to 9 x 13 mm. There are also multiple bilateral renal calculi with multiple stones on the left up to 9 mm, and multiple right lower pole stone measuring 3 and 6 mm.

2/06/03 Follow-up with Dr. Kuchenbecker (page006) with recommendations to take Motrin prn pain, Bactrim DS, and Vicodin prn pain. A hand-written notation at the foot of the page (page 00619) indicates "hold on Vicodin' try to fill on rest". However, he was admitted the same day (page 015-016) for complaints of bilateral flank pain but only left sided obstruction, undergoing repeat left ureteroscopic laser lithotripsy and stent.

## Herbert K. W. Chinn, M.D., Inc.
### ADULT and PEDIATRIC UROLOGY

Queen's Physician Office Building II
1329 Lusitana Street, Suite #108
Honolulu, Hawaii 96813

Telephone: 531-0848
FAX: 531-1032

E-mail: hkchinn@pol.net
Physicians Exchange: 524-2575

---

2/26/03 Follow-up by Dr. Kuchenbecker for cystoscopy with stent removal (page 00618). He was also prescribed allopurinol 300 mg qd and NaHCO3 650 mg 2 tid to alkalinize the urine and dissolve the remaining stones chemically. Follow-up planned for three months with CT scan.

3/20/03 (page 00494) Follow-up with Dr. Paderes for left flank pain and dysuria. Patient was not in any distress, but had bilateral flank discomfort. Dr. Paderes referred him back to Dr. Kuchenbecker.

4/30/03 CT KUB demonstrates three right lower pole renal calculi measuring up to 5 mm in size. There is no evidence of obstruction. There is mild to moderate left hydronephrosis (significantly improved) with two small left ureteral calculi (one at the L3 level measuring 2-3 mm and the second at the S1 level measuring 1-2 mm) and several left renal calculi (measuring 2 mm in the upper pole calyx and 3 mm in the left lower pole). Per Dr. Paderes, the radiologist was referred to Dr. Kuchenbecker with the results (page 00495).

5/26/03 (page 00492) Patient complains of passing blood and bilateral flank pain 8/10 in severity to a nurse. Referred to Dr. Paderes the following day. Evaluated by Medical Clinic on 5/27/03. SURP committee approval the following day for referral back to Dr. Kuchenbecker.

6/13/03 Seen in clinic for right kidney pain but only in "mild distress". Arrangements made for follow-up with Dr. Kuchenbecker in July 2003.

7/30/03 Readmission to Castle for recurrent pain, undergoing left ESWL (page 017). Indication made to expect some discomfort with passage of the stones.

7/27/05 Letter from Dr. Kuchenbecker that he will no longer see patients from Halawa Correctional Facility (page 008).