IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WILLIAM S. AHOLELEI, | CASE NO. 03-00171 HG-KSC |
| Plaintiff, | AFFIDAVIT OF KAY BAUMAN, M.D.; EXHIBIT "AA" |
| vs. | |
| BARBARA KYSAR, DOCTOR S. PADERES, DOCTOR BAUMAN, DOES I-V, | Trial Date: December 5, 2006 |
| Defendants. | |

306-072/Bauman Affidavit.wpd

## AFFIDAVIT OF KAY BAUMAN, M.D.

STATE OF HAWAI'I      )
                      : SS
CITY & COUNTY OF HONOLULU )

KAY BAUMAN, being first duly sworn on oath, deposes and says:

1. I am a named defendant in the above-captioned case and I have personal knowledge of the facts set forth in this affidavit, except where facts are alleged upon information and belief.

2. I have reviewed medical records maintained by the State of Hawai'i Department of Public Safety relating to treatment provided to Plaintiff William S. Aholelei from the time Plaintiff filed his Amended Complaint on September 22,

2003 until the present and provide the following information based upon this review.

3. On October 3, 2003 Plaintiff was injured in an altercation with another inmate and was taken to the Queen's Medical Center where he was treated and hospitalized for a fractured jaw. He was hospitalized in the Halawa infirmary from October 16, 2003 until December 3, 2003. In addition to medical care provided by healthcare staff at the Halawa infirmary, Plaintiff was also treated by specialists Allen Strasberger, M.D. and Dr. Au K.W. Lee. While hospitalized in the infirmary, Plaintiff reported kidney pain connected to kidney stones on two occasions: November 11, 2003 and November 19, 2003. On both occasions the pain resolved with Motrin 800 mg.

4. Following his discharge from the infirmary, Plaintiff complained of visual disturbances and difficulty with sleep and was provided with an ophthalmology examination by an outside consultant, Dr. Kubo, and was provided with psychiatric consultations with Dr. Patel.

5. On January 13, 2004 he was seen in clinic with complaints of back pain, migraine pain and was requesting a snack due to his weight loss. He did not make any complaint of kidney related pain. On February 13, 2004 Plaintiff was seen in clinic. There were no complaints of kidney related pain. He was prescribed Morin 800 mg and Flexeril 10 mg for his back pain. At that time he was still

taking Allopurinal 300 mg for kidney stones. On March 2004 he reported to sick call for breathing difficulties and anxiety. Again, he did not make any complaint of kidney related pain.

6. On June 29, 2004 a CT Urogram was performed at Castle Medical Center and revealed a 6 mm stone in the right lower kidney which was nonobstructive and a few parapelvic cysts in the left kidney. There was no hydronephrosis or hydroureter.

7. On July 23, 2004 a urology consult was obtained from Dr. Kuchenbecker who advised that the right kidney stone would not account for the left sided pain. An ESL of the right could be considered although the Plaintiff was asymptomatic. Thereafter, there were no complaints of kidney pain until December 3, 2004. Motrin was given to Plaintiff. A urinalysis was conducted and was negative for blood. A subsequent urinalysis performed on February 10, 2005 was also negative for blood.

8. On April 1, 2005 I ordered an ultrasound of Plaintiff's kidneys be performed as routine follow up. The ultrasound, conducted April 8, 2005, demonstrated a 9 mm stone in the lower pole of the right kidney. There were no other calculi and no hydronephrosis and there was a normal flow from both ureters to the bladder.

9. On July 22, 2005 SURP approved an ESL for the right kidney stone and

an appointment was scheduled with Dr. Kuchenbecker's office for August 19, 2005. However, on or about July 27, 2005 we were notified that Dr. Kuchenbecker would no longer see Halawa patients. At that time, Dr. Kuchenbecker advised that the ultrasound demonstrated a 9 mm non-obstructing stone in lower pole of right kidney. He explained that the CT scan from the previous year showed a 6 mm stone in same location so there was a slight increase in size. Since previous stones had been both calcium oxalate and uric acid, he suggest obtaining a KUB. If the stone was not visible this would suggest that the stone is uric acid in composition and should be dissolved with alkali therapy using either sodium bicarbinate or Urocit -K. If the stone contained calcium it would be visible on plain KUB, and he suggested consideration of ESWL.

10. A KUB at St. Francis West was scheduled for August 4, 2005 but had to be rescheduled for August 17, 2005. At this same time, Plaintiff was experience symptoms suggestive of GERD and arrangements were made for examination and consultation with a gastroenterologist.

11. On August 12, 2005 Plaintiff reported to sick call with complaints of right flank pain for 2-3 days and left knee pain. He was voiding without difficulty. Motrin was provided.

12. On August 17, 2005, pursuant to Dr. Kuchenbecker's recommendation, the KUB was taken. As a result, an appointment was made for Plaintiff to see a

urologist at Queen Emma Clinic on September 12, 2005. On September 12, 2005 Plaintiff was examined by Dr. Chou regarding his kidney condition.

13. On October 24, 2005 Dr. Chou again examined the patient and recommended a lithotripsy. On December 9, 2005 a lithotripsy was performed for right renal pain. Plaintiff was given Percocet for pain and told to return for follow up in 2-3 weeks.

14. On December 12, 2005 Plaintiff had a follow up appointment at Queen Emma Clinic Urology where it was recommended he continue with Percocet for pain until the supply runs out and then change to Vicodin. It was requested that a CT scan with stone protocol be conducted in one month.

15. On December 27, 2005 the CT scan with stone protocol was conducted and revealed light interval growth in one of the multiple right kidney stones from 5.0 to 6.6 cm. Multiple calculi which were present in the upper and lower pole calices on the left were no longer present and the obstructing left ureteral calculus had resolved. The previous hydronephrosis had also resolved.

16. On January 9, 2006 Dr. Chou examined Plaintiff who was complaining of a slow stream without difficulty voiding. Dr. Chou recommended he restart Flomax with follow up in four to six weeks to assess the efficacy of the medication.

17. On February 23, 2006 Plaintiff was taken back to Dr. Chou. Plaintiff reported a persistent weak stream despite taking Flomax. Dr. Chou scheduled a cystoscopy for April 3, 2006 which was subsequently rescheduled to May 25, 2006.

18. On May 25, 2006 Plaintiff was examined by Dr. Chou who performed a cytoscopy. The cystoscopy revealed that there were no strictures and the urethra and prostatic urethra were within normal limits. The bladder was within normal limits without lesions or tumors. Dr. Chou determined that no further surgical intervention was necessary at that time. He prescribed pyridium and doxazocin.

19. Attached hereto as Exhibit "AA" are true and correct copies of records relating to medical care and treatment provided to Plaintiff for his kidney condition.

FURTHER AFFIANT SAYETH NAUGHT.

_____
KAY BAUMAN

Subscribed and sworn to before me
this _28th_ day of _August_, 2006.

_____
Notary Public, State of Hawai'i

_JOJAN LEE_
(Print name)
My commission expires: _04/09/2010_