cc HG
cc PSA on 9/5/06

MARK J. BENNETT   2672
Attorney General of Hawai'i

CARON M. INAGAKI   3835
MIRIAM P. LOUI   3582
Deputy Attorneys General
Department of the Attorney
 General, State of Hawai'i
425 Queen Street
Honolulu, Hawai'i 96813
Telephone: (808) 586-1494
Facsimile: (808) 586-1369
E-Mail: Miriam.P.Loui@hawaii.gov

Attorneys for Defendant
SISAR PADERES, M.D. (improperly
identified as Doctor S. Paderes)

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 3 1 2006

at __2__ o'clock and __50__ min __P__ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WILLIAM S. AHOLELEI,<br><br>     Plaintiff,<br><br>vs.<br><br>BARBARA KYSAR; DOCTOR S. PADERES, DOCTOR BAUMAN; DOES I-V,<br><br>     Defendants. | CIVIL NO. 03 00171 HG-KSC<br><br>**DEFENDANT SISAR PADERES, M.D.'S REPLY TO DEFENDANT WILLIAM S. AHOLELEI'S OBJECTION TO DEFENDANT PADERES' MOTION FOR SUMMARY JUDGMENT FILED ON AUGUST 2, 2006; AFFIDAVIT OF SISAR PADERES, M.D.; EXHIBIT "A"; CERTIFICATE OF SERVICE**<br><br>Hearing<br>Date:  September 13, 2006<br>Time:  2:00 p.m.<br>Judge: Hon. Helen Gillmor |

204296_1.DOC

**ORIGINAL**

)
_____ )  Trial Date: December 5, 2006

**DEFENDANT SISAR PADERES, M.D.'S REPLY TO PLAINTIFF WILLIAM S. AHOLELEI'S OBJECTION TO DEFENDANT PADERES' MOTION FOR SUMMARY JUDGMENT FILED ON AUGUST 2, 2006**

Defendant SISAR PADERES, M.D., by and through his attorneys, Mark J. Bennett, Attorney General, and Caron M. Inagaki and Miriam P. Loui, Deputy Attorneys General, hereby submits this Reply to Plaintiff William S. Aholelei's Opposition to Defendant Sisar Paderes, M.D.'s Motion for Summary Judgment filed on August 2, 2006.

I.  INTRODUCTION

Plaintiff makes a series of allegations against Defendant Sisar Paderes, M.D. (Dr. Paderes) in his Motion in Objection ("Opposition") to Dr. Paderes' Motion for Summary Judgment filed on August 2, 2006, in support of his position that Dr. Paderes was deliberately indifferent to his medical needs. Specifically, Plaintiff's Opposition alleges that Dr. Paderes: (1) was the proximate cause of Plaintiff's prolonged and unnecessary pain (related to his kidney condition) (Opp. p. 2); (2) told Plaintiff he would need specialized medical care, but then denied Plaintiff the same for more than one year because of his indigent status (Opp. pp. 2-3); (3) is not properly trained (Opp. p. 3); and (4) had knowledge of Plaintiff's medical needs (regarding his kidney condition) but failed to address them (Opp. p. 4).

However, Plaintiff's Opposition makes no reference to the actual time periods when Dr. Paderes committed the alleged violations. Plaintiff is not allowed in his Opposition to amend the Amended Complaint by adding new claims or expanding the time periods of the alleged violations that were previously asserted in the Amended Complaint. See Amended Report of Scheduling Conference and Order filed February 22, 2006.

The medical care and treatment Plaintiff received for his kidney condition for the time periods addressed in the Amended Complaint through July 30, 2003, were addressed in Defendant Paderes' Motion for Summary Judgment filed on August 2, 2006. In accordance with the Court's Order filed on August 23, 2006, this Reply will address the medical care and treatment that Plaintiff received for his kidney condition from July 30, 2003 until the present.

Plaintiff is no longer incarcerated at the Halawa Correctional Facility ("HCF"). On or about January 28, 2005, Plaintiff was transferred from the HCF to the Waiawa Correctional Facility ("WCF"). Paderes Aff. ¶ 32. Thereafter, on or about October 26, 2006, Plaintiff was transferred from the WCF to the Oahu Community Correctional Center ("OCCC"). Paderes Aff. ¶ 53. Plaintiff continues to receive medical care for his kidney condition at OCCC. Paderes Aff. ¶ 65.

II.  **ARGUMENT**

  A.  **The Medical Care And Treatment That Plaintiff Received From Dr. Paderes Met Constitutional Standards**

Deliberate indifference is a high legal standard. Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Under this standard, the prison official must not only "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person must also draw the inference. Id. (quoting Farmer, 511 U.S. at 837). Plaintiff's allegations against Dr. Paderes are insufficient to give rise to a claim for relief under § 1983 for violation of the Eighth Amendment.

During his incarceration, Plaintiff has received medical treatment for his kidney condition from at least three state prison facilities: HCF, WCF, and OCCC. The record is clear with respect to Dr. Paderes that whenever Plaintiff complained about his kidney condition, Dr. Paderes examined, treated, and referred Plaintiff, appropriately. Given the nature of Plaintiff's medical condition and, therefore, the need for specialized medical care, the Department of Public Safety referred him to David Kuchenbecker, M.D. and David Chou, M.D, urologists who worked outside of the Department's medical system. Paderes Aff. ¶ 5.

The record of Plaintiff's medical history from July 30, 2003 until the present demonstrates Dr. Paderes provided a level of medical care and treatment

that met constitutional standards. In fact, Plaintiff's medical care in the State prison system has been exceedingly high.

During his incarceration, Plaintiff has undergone kidney surgery on four separate occasions: (1) November 7, 2002; (2) February 6, 2003; (3) July 30, 2003; and (4) December 9, 2005.

Following Plaintiff's third kidney surgery (July 30, 2003), he was seen by Dr. Paderes on August 27, 2003, for complaint of flank pain. Paderes Aff. ¶ 9. Dr. Paderes recommended continued treatment and monitoring of his urologic condition. Id. Plaintiff was to return to clinic for further reevaluation in 30 days. Id.

On January 13, 2004, Dr. Paderes saw Plaintiff in clinic for multiple complaints, including back pain, but he made no specific complaint of kidney pain. Motrin was prescribed. Paderes Aff. ¶ 13.

On April 6, 2004, Dr. Paderes reviewed Plaintiff's medical chart and requested follow up to determine whether he was scheduled for an appointment with an urologist. Paderes Aff. ¶ 16.

On June 8, 2004, Dr. Paderes saw Plaintiff in medical clinic. He ordered a urinalysis (UA) with plan to refer Plaintiff for a urology consult after the UA was completed. Paderes Aff. ¶ 18.

On June 15, 2004, a urology consult with Dr. Kuchenbecker was made at Dr. Paderes' request to follow up on complaints of kidney pain. The appointment was scheduled for July 9, 2004, but later was later cancelled by Dr. Kuchenbecker. Paderes Aff. ¶ 20.

On June 24, 2004, a consultation for CT scan was made at Dr. Paderes' request to look for kidney stones. The appointment was scheduled for June 29, 2004. Paderes Aff. ¶ 21.

On July 9, 2004, a consultation with Dr. Kuchenbecker was prepared at Dr. Paderes' request for follow up of kidney pain. The appointment was scheduled for July 23, 2004. Paderes Aff. ¶ 24.

Dr. Paderes did not provide any medical care or treatment to Plaintiff from July 14, 2004 to February 12, 2006, a period of approximately nineteen months. Paderes Aff. ¶ 3. Dr. Paderes did not work at the HCF medical unit during the time periods below, for the following reasons:

    a.    July 14-22, 2003, U.S. Army Reserve annual military training;

    b.    July 23, 2003 to August 1, 2003, leave without pay;

    c.    August 9-13, 2003, vacation; and

    d.    August 16, 2003 to February 12, 2006, active duty and deployment to Iraq. Id.

On August 3, 2003, Dr. Paderes returned to work from vacation and worked briefly until August 6, 2003, however, he did not examine or treat Plaintiff at all during that time. Paderes Aff. ¶ 4.

After Plaintiff's fourth and most recent surgery on December 9, 2005, he underwent a CT scan of the abdomen and pelvis on December 27, 2005, due to difficulty urinating. Paderes Aff. ¶¶ 59-60. The abdominal CT impression showed multiple right renal calculi, resolution of multiple left renal and ureteral calculi. Id. The pelvic CT impression showed no evidence of ureteral calculus. Id.

However, because Plaintiff continued to experience urinary difficulty, he was examined by Dr. Chou on January 9, 2006. Paderes Aff. ¶ 61. Dr. Chou prescribed Flomax and recommended follow up in six months. Id. Plaintiff was seen again by Dr. Chou for urinary difficulty on February 23, 2006. Paderes Aff. ¶ 63. In order to rule out an obstruction, a cystoscopy was scheduled for April 3, 2006, but the procedure was rescheduled to May 25, 2006. Id.

On May 25, 2006, Dr. Chou performed a cystoscopy on Plaintiff. The results showed that the bladder was WNL (within normal limits), the prostatic urethra was open, and the bladder neck appeared closed but was WNL and without lesions or tumors. Paderes Aff. ¶ 64. Vicodin, Doxazosin, and Pyridium were prescribed for pain and dysuria. Id. No surgical intervention was recommended. Id.

Although Plaintiff continues to receive medical treatment, as requested, he has not sought treatment for his kidney condition since May 25, 2006.

On August 16, 2004, Dr. Paderes was activated for military duty in Iraq for a period of 545 days. Dr. Paderes returned to work at the Department of Public Safety on February 13, 2006. Paderes Aff. ¶ 66. Since his return to work from active military duty, Dr. Paderes has reviewed Plaintiff's medical chart only once, on July 31, 2006. Aff. ¶ 66. Otherwise, Dr. Paderes has not personally examined or treated Plaintiff. Id.

The record is clear that when Dr. Paderes examined Plaintiff for his kidney condition, appropriate medical care and treatment followed. Moreover, Dr. Paderes adhered to the recommendations of Drs. Kuchenbecker and Chou with respect to Plaintiff's urologic care. Thus, despite Plaintiff's broad allegations of inadequate and delayed medical treatment, he has failed to demonstrate that Dr. Paderes acted with deliberate indifference to his medical needs.

    B.    If There Was A Constitutional Violation, Dr. Paderes Is Entitled To Qualified Immunity

Assuming Dr. Paderes violated the Eighth Amendment, he is shielded by qualified immunity.[1] Public officers acting in their official capacities are "shielded

---

[1] Dr. Paderes was sued in his individual capacity. See Am. Compl. Section IV., p. 3. To the extent that Plaintiff has brought an action for damages against Dr. Paderes in his official capacity as an official of the State of Hawai'i, this action is barred by the Eleventh Amendment. Under the Eleventh

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Moran v. State of Washington, 147 F.3d 839 (9th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to protect "all but the plainly incompetent or those who knowingly violate the law, Malley v. Briggs, 475 U.S. 335, 341 (1986), and is meant to allow for reasonable errors "because officials should not err always on the side of caution because they fear being sued." Hunter v. Bryant, 502 U.S. 224, 229 (1991 (per curiam).

Qualified immunity involves a two-pronged analysis, which, regardless of whether the constitutional violation occurred, permits the official to prevail if: (1) the right asserted by the plaintiff was not clearly established, or (2) the official could have reasonably believed that his particular conduct was lawful. Romero v. Kitsap County, 931 F.2d 624, 627 ((9th Cir. 1991). Although it is settled law that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment, Estelle v. Gamble, 429 U.S. 97, 104 (1976), Dr. Paderes is entitled to

---

Amendment, a state is immune from suit brought in federal court by its citizens or citizens of other states. Papasan v. Allain, 478 U.S. 265, 276 (1986); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). A suit against state officials, in their official capacity, is no different than a suit against the State itself and therefore is subject to the Eleventh Amendment. Kentucky v. Graham, 473 U.S. 159, 166-67 (1985). Furthermore, "neither a state nor its officials acting in their official capacity are 'persons' under Section 1983." Will v. Michigan Dep't. of State Police, 491 U.S. 58, 62-71 (1989).

qualified immunity based on both prongs, because the gravamen of the deliberate indifference claim appears to be that Dr. Paderes purposefully ignored or failed to respond to Plaintiff's medical needs, or that Dr. Paderes denied, delayed, or intentionally interfered with Plaintiff's medical treatment, and that a delay in surgery resulted in harm to him.

A review of the record demonstrates that it certainly would not have been clear to a reasonable staff physician that Dr. Paderes' medical care and treatment of Plaintiff was "unlawful." Therefore, Dr. Paderes is entitled to qualified immunity on Plaintiff's claim of deliberate indifference to his medical needs.

### C. Plaintiff Lacks Standing To Assert The Constitutional Rights Of Other Inmates

Plaintiff's Opposition alleges that his inadequate medical treatment is part of a larger "systematic pattern of injury" committed upon other prisoners at the HCF. Opp. p. 5. He further alleges "third party evidence is important and necessary to show a satictical [sic] pattern of inadequate medical care." Id.

Ordinarily, a plaintiff does not have standing to complain about the deprivations of the constitutional rights of others. Powers v. Ohio, 499 U.S. 400, 410 (1991). Moreover, a pro se prisoner plaintiff cannot proceed as a representative for a class of prisoners. See Oxendine v. Williams, 509 F.2d 1045, 1047 (4th Cir. 1975); see also Russell v. United States, 308 F.2d 78, 79 (9th Cir.

1962) (a litigant appearing in propria persona has no authority to represent anyone other than himself).

Plaintiff may not proceed with claims brought on behalf of other inmates or the prison population in general. To the extent that plaintiff's claims are brought on behalf of others, they should be dismissed.

III. CONCLUSION

The undisputed material facts show that Dr. Paderes was not deliberately indifferent to Plaintiff's medical needs. Thus, Dr. Paderes is entitled to summary judgment as a matter of law, and he respectfully requests that judgment be entered in his favor. Assuming, however, that Dr. Paderes violated the Eighth Amendment, he is entitled to qualified immunity.

DATED: Honolulu, Hawai'i, August 31, 2006.

STATE OF HAWAI'I

MARK J. BENNETT
Attorney General
State of Hawai'i

_____
MIRIAM P. LOUI
Deputy Attorney General

Attorneys for Defendant
SISAR PADERES, M.D.

204296_1.DOC                                11