| | |
|---|---|
| WILLIAM S. AHOLELEI, | ) CIVIL NO. 03-00171 HG-KSC |
| | ) |
| Plaintiff, | ) **AFFIDAVIT OF SISAR PADERES,** |
| | ) **M.D.; EXHIBIT "A"** |
| vs. | ) |
| | ) |
| BARBARA KYSAR; DOCTOR S. PADERES, DOCTOR BAUMAN; DOES I-V, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT OF SISAR PADERES, M.D.

STATE OF HAWAI'I            )
                            )
CITY & COUNTY OF HONOLULU   )

SISAR PADERES, M.D., being first duly sworn on oath, deposes and says:

1. I am a medical doctor employed by the State of Hawai'i, Department of Public Safety, and one of the named Defendants in the instant lawsuit.

2. I have personal knowledge of the matters set forth below and am competent to so testify, except where facts are alleged upon information and belief.

3. I did not work at the HCF medical unit during the time periods below, due to the following reasons:

    a.  July 14-22, 2004, U.S. Army Reserve annual military training;

    b.  July 23, 2004 to August 1, 2004, leave without pay;

    c.  August 9-13, 2004, vacation; and

       d.       August 16, 2004 to February 12, 2006, active duty and deployment to Iraq.

    4.       When I returned to work from vacation on August 3, 2004, I worked briefly until August 6, 2004, however, I did not personally examine or treat Plaintiff during that time.

    5.       In the scope of my employment, I have access to the medical records of inmates that are maintained by the Department of Public Safety. I have reviewed Plaintiff's medical records from the time Plaintiff filed the Amended Complaint until the present. Included in that review were certain records of urologists David Kuchenbecker, M.D., and David Chou, M.D., to whom the Department of Public Safety referred Plaintiff for urologic evaluation and treatment.

    6.       Attached hereto as Exhibit "A" are true and correct copies of the medical records I reviewed, which are incorporated herein by reference. Certain information has been redacted in order to protect Plaintiff's personal privacy interests.

    7.       Based upon my review of Plaintiff's medical records, I provide the following information.

8. On July 30, 2003, Plaintiff underwent extracorporeal shockwave lithotripsy by Dr. Kuchenbecker. This was Plaintiff's third surgery for kidney stones.

9. **Plaintiff next sought medical attention for his kidney condition on August 27, 2003, when I evaluated him at the HCF medical clinic for flank pain. I recommended continued treatment and monitoring of his urologic condition. Plaintiff was to return clinic for further reevaluation in 30 days.**

10. **I did not examine or treat Plaintiff for his kidney condition during the entire month of September 2003.**

11. On October 3, 2003, Plaintiff was assaulted by other inmates at the HCF. Due to injuries sustained during the incident, Plaintiff went to the hospital.

12. Following Plaintiff's return to the HCF, he remained at the HCF infirmary from October 16, 2003 until December 3, 2003. During that time, Plaintiff complained about kidney pain on November 11 and 19, 2003. On both occasions, he was given Motrin for pain management.

13. **On January 13, 2004, I saw Plaintiff in clinic for multiple complaints, including back pain, but he made no specific complaint of kidney pain. Motrin was prescribed.**

14. On March 4, 2004, Plaintiff was seen in clinic for call. He made no complaints regarding his kidney condition.

15. March 12, 2004, Plaintiff was seen in clinic. He made no complaints of kidney pain.

16. **On April 6, 2004, I reviewed Plaintiff's medical chart and requested follow up to determine whether he was scheduled for an appointment with an urologist.**

17. On May 28, 2004, Plaintiff was seen in chronic care clinic for monitoring as part of a regular check up on his various medical conditions. He complained of blood in his urine.

18. **On June 8, 2004, I saw Plaintiff in medical clinic. I ordered a urinalysis (UA) with plan to refer Plaintiff for a urology consult after the UA was completed.**

19. On June 9, 2004, a UA performed was negative for blood in urine. A urology consult was approved.

20. **On June 15, 2004, a urology consult with Dr. Kuchenbecker was made at my request to follow up on complaints of kidney pain. The appointment was scheduled for July 9, 2004, but was later cancelled by Dr. Kuchenbecker (see below).**

21. **On June 24, 2004, a consultation for CT scan for was made at my request to look for kidney stones. The appointment was scheduled for June 29, 2004.**

204440_1.DOC                                     4

22. The CT scan was performed on June 29, 2004. It showed a 6 mm stone in the lower right kidney that was nonobstructive; there were no stones in the left kidney.

23. On June 30, 2004, Dr. Kuchenbecker cancelled an appointment scheduled for July 9, 2004, as "not necessary."

**24. On July 9, 2004, a consultation with Dr. Kuchenbecker was made at my request for follow up on complaint of kidney pain. The appointment was scheduled for July 23, 2004.**

25. On July 23, 2004, Plaintiff was seen in medical clinic by Charlotte Yuen, NP for multiple complaints, including pain from kidney stones. CT scan done on June 29, 2004; awaiting CT results from Dr. Kuchenbecker.

26. On July 23, 2004, Plaintiff also was seen by Dr. Kuchenbecker, who explained that a remaining right-side kidney stone could not explain left-sided pain. Although Plaintiff was asymptomatic on the right side, Dr. Kuchenbecker nevertheless recommended consideration of ESL of the right stone.

**27. During the period of August 3-6, 2004, I did not personally examine or treat Plaintiff.**

28. A UA performed on August 18, 2004 was negative for blood in urine.

29. On September 7, 2004, Plaintiff was seen by Dr. Abbruzzese in medical clinic for kidney pain and hematuria. Renal calculi should pass in his urine, doing well, UA normal.

30. On December 3, 2004, Plaintiff was seen in chronic care clinic. He complained of kidney pain and received Motrin. A UA was ordered because of Plaintiff's history of kidney stones.

31. A UA performed on January 6, 2005 was negative for blood in urine.

32. On January 28, 2005, Plaintiff was transferred to the WCF.

33. On February 10, 2005, Plaintiff was seen in chronic care clinic. Kidney stones were stable. A UA ordered and performed that day was negative for blood in urine. Flomax and sodium bicarbonate were prescribed (to decrease urinary symptoms).

34. On March 11, 2005, Plaintiff was seen in the medical unit as "drop in" and complained of left lower back pain. A UA performed that day was negative for blood in urine. Notation to review UA results.

35. On March 11, 2005, Dr. Bauman reviewed Plaintiff's medical chart and noted recurrent kidney stones. Notation to discuss a new medication with Plaintiff that would reduce stone formation by 50% and increase excretion.

36. On April 1, 2005, Plaintiff was seen in medical clinic by Dr. Bauman. Recurrent kidney stones were noted. Repeat urine for microalbumin. Repeat kidney US (ultrasound); scheduled for April 8, 2005.

37. On April 8, 2005, a kidney ultrasound was performed. Results showed a 9 mm stone in the lower pole of the right kidney, no other calculi, no hydronephrosis, and normal flow from both ureters to the bladder.

38. On April 29, 2005, Plaintiff was seen in chronic care clinic by Dr. Bauman. The results of the April 8, 2005 ultrasound were noted. Plaintiff made no complaints about his kidneys.

39. On July 22, 2005, Plaintiff was seen in chronic care clinic by Dr. Bauman. She approved urology for ESL (by Dr. Kuchenbecker) on the remaining right kidney stone.

40. On July 27, 2005, Dr. Kuchenbecker informed the Department of Public Safety that he would no longer be treating the Department's inmates. He referred Plaintiff to the Queen Emma Clinic for further urologic treatment.

41. On August 9, 2005, a consultation with St. Francis West Radiology was prepared at Dr. Bauman's request.

42. On August 12, 2005, Plaintiff was seen at the medical clinic for sick call. He complained of difficulty voiding. A UA performed that day was negative

for blood in urine. Plaintiff was scheduled to see Dr. Kuchenbecker on August 19, 2005.

43. On August 17, 2005, an x-ray was performed on Plaintiff and it confirmed the presence of a 9 mm stone in the lower pole of the right kidney.

44. On August 26, 2005, Plaintiff was seen by Dr. Bauman in medical clinic. Enlarged kidney stones were noted. She referred Plaintiff for further urologic consultation at Queen Emma Clinic. An appointment was scheduled for September 12, 2005.

45. On August 29, 2005, Plaintiff's medical chart reflected Plaintiff's appointment with Dr. Chou on September 12, 2005.

46. On September 9, 2005, Plaintiff was seen in clinic by Dr. Bauman for complaints including kidney stones. Urology consult pending.

47. On September 12, 2005, Plaintiff was examined by David Chou at the Queen Emma Urology Clinic. He was scheduled for ESW on the right kidney stone.

48. On September 13, 2005, Plaintiff's surgery was approved by Dr. Bauman.

49. On September 14, 2005, an x-ray consultation at St. Francis Medical West was prepared at Dr. Bauman's request. The appointment was scheduled for September 27, 2005.

50. Plaintiff was seen at the medical unit on September 21 and 23, 2005 for complaints unrelated to his kidney condition. On both visits, Plaintiff's pending kidney stone surgery was noted by the medical staff.

51. On September 25, 2005, a pre-op consultation at Queen Emma Clinic was prepared at Dr. Bauman's request. The appointment was scheduled for October 24, 2005.

52. On October 24, 2005, Plaintiff was seen by Dr. Chou for pre-op of lithotripsy procedure.

53. Two days later, on October 26, 2005, Plaintiff was transferred from the WCF to the OCCC.

54. On October 31, 2005, Plaintiff was seen in clinic for chronic disease visit. Multiple problems were noted and he was scheduled to return to clinic the following week.

55. On November 7, 2005, Plaintiff was seen in medical clinic. Renal stones were noted. Plaintiff was referred back to urology.

56. On December 7, 2005, a urology consultation at Queen Emma Clinic was prepared and an appointment was scheduled for December 9, 2005. A second consultation at Queen Emma Clinic for a follow appointment post-lithotripsy was scheduled for December 12, 2005.

57. On December 9, 2005, Dr. Chou performed extracorporeal shockwave lithotripsy on Plaintiff's right kidney. Follow up in 2-3 weeks to check KUB (kidney, ureter, and bladder).

58. On December 12, 2005, during a follow up visit with Dr. Chou, Plaintiff was noted to be doing well, although he still had some pain. Plaintiff was scheduled for a CT scan with stone protocol within one month.

59. On December 13, 2005, a urology consultation with Dr. Chou was prepared at Dr. Zienkiewicz's request.

60. On December 27, 2005, Plaintiff underwent a CT scan of the abdomen and pelvis. <u>Abdominal CT findings</u>: A comparison with an earlier CT scan performed on October 17, 2002, showed that two stones on the right had grown slightly, a third stone was present, and the largest stone was no longer present. Multiple calculi present in the upper and lower poles on the left were gone, obstructing left ureteral calculus was resolved, previous hydronephrosis was resolved, and the left kidney was slightly smaller. <u>Impression</u>: multiple right renal calculi, resolution of multiple left renal and ureteral calculi. <u>Pelvic CT findings</u>: Lower ureters normal in caliber. No evidence of bladder calculus. Remainder of pelvis unremarkable except for tiny calcified appendicoliths present in otherwise normal appearing appendix. <u>Impression</u>: no evidence of ureteral calculus.

61. On January 9, 2006, Plaintiff was examined by Dr. Chou due to difficulty urinating. Flomax was prescribed to ease Plaintiff's urinary symptoms with follow up in six to eight weeks to assess efficacy of the medication. Recommended follow up of KUB (kidney, ureter, and bladder) in six months to reassess Plaintiff for kidney stones.

62. On January 10, 2006, a consultation for Plaintiff's follow up with Dr. Chou was prepared at Dr. Zienkiewicz's request. The appointment was scheduled for February 23, 2006.

63. On February 23, 2006, Plaintiff was examined by Dr. Chou for trouble voiding. In order to rule out an obstruction, a cystoscopy was scheduled for April 3, 2006, but the procedure was rescheduled to May 25, 2006.

64. On May 25, 2006, Dr. Chou performed a cystoscopy on Plaintiff. The results showed that the bladder was WNL (within normal limits), the prostatic urethra was open, and the bladder neck appeared closed but was WNL and without lesions or tumors. Vicodin, Doxazosin, and Pyridium were prescribed for pain and dysuria. No surgical intervention was recommended.

**65. On July 31, 2006, I reviewed Plaintiff's medical chart, including Dr. Chou's consult report, but I did not personally examine or treat Plaintiff. Plaintiff continues to receive Doxazosin for dysuria.**

**66.    I have not personally examined or treated Plaintiff since I returned to work at the Department of Public Safety on February 13, 2006.**

FURTHER AFFIANT SAYETH NAUGHT.

_____
SISAR PADERES, M.D.

Subscribed and sworn to before me
this ___30th___ day of August, 2006.

_____
Notary Public, State of Hawai'i

_Lavonne M. Makaawaawa_
(Print Name)
My commission expires: __4-1-08__